WALLACE H. ARNEY, Receiver, Appellant, v. BRITTAIN &
COMPANY, Appellee.

**CORPORATIONS:** Contracts with Promoter—Fraud—Remedies.
1  Where a promoter made a contract of sale of a packing plant by fraudulent misrepresentations, the company to whom it was sold could, upon discovery, either (a) sue the promoter for damages on an accounting, or (b) rescind the contract and recover the consideration paid, from the promoter or from a third person receiving the same with notice of the fraud.

**CORPORATIONS:** Contracts with Promoter—Fraud. Fraud on the
2  part of a promoter of a corporation in obtaining a contract from the company for the purchase of a packing plant by misrepresentations, would render the contract voidable, and not void, and it would not be an election to rescind for the company to bring suit against a third person for the consideration, without making the promoter a party.

**CORPORATIONS:** Contracts with Promoter—Consideration—Accept-
3  ance of Check. Where a company purchased from a promoter a

packing plant, and, under the agreement, delivered a check for a cash payment, to be paid under the contract to the promoter, which was the same as was to be received by the selling company, and the said check was thereafter delivered to the seller under its agreement of sale to the promoter, the acceptance of the check by the seller was based upon consideration.

**CORPORATIONS:** Officers De Facto—Dealings with Third Persons.
4   Where a third person in good faith deals with a corporation through purported officers, who are acting as such openly and without challenge, such officers will be deemed *de facto* officers, and the corporation will be bound by their acts within the scope of the functions of the office.

*Appeal from Marshall District Court.*—B. F. CUMMINGS, Judge.

APRIL 14, 1919.

SUIT by the plaintiff, as receiver of an insolvent corporation, against the defendant, to recover money which was the property of the plaintiff corporation, and which was wrongfully paid to and received by the defendant. The answer was, in general effect, a denial that the payment of the money in question to the defendant was wrongful. There was a decree dismissing the petition. The plaintiff appeals.—*Affirmed.*

*Carney & Carney* and *C. H. Van Law,* for appellant.

*C. H. E. Boardman,* for appellee.

EVANS, J.—The defendant corporation was the owner of a packing plant, situated at Marshalltown, Iowa. On February 25, 1915, it sold the same by written contract to one David Naylor and R. F. Hall, for a consideration of $92,250, to be paid as follows: $10,000 on June 15, 1915, and the balance of the purchase price on or before six months from the date of the contract. Naylor and Hall were without capital, and paid nothing on the contract at the time of its execution. They were promoters. After acquiring the

contract, they proceeded to organize a new corporation, as a purchaser of the plant in question. They came to Marshalltown, and interested many prominent business men in the enterprise. In form, at least, they organized a corporation with a capital stock of $400,000, intending to sell the stock thereof to the citizens of Marshalltown and vicinity. This organization was had on April 22, 1915. On May 4, 1915, the directors of the new corporation, one of whom was Hall, entered into a contract with Naylor, whereby it purported to purchase the plant in question for $170,000. It also entered into a contract to pay Naylor a commission of 12½ per cent for the sale of the stock of the new corporation. The evidence shows that many of the stockholders and directors understood from Naylor that $170,000 was the option price for which he obtained the contract. There was much dissatisfaction on the part of proposed stockholders and directors as to the rate of commission exacted by Naylor. The earlier meetings of the directors were stormy. The personnel of the directorate changed rapidly, by successive resignations. Some evidence tends to show sinister manipulation and control of the acts of the directors by Naylor and Hall.

Under the contract between Naylor and the new corporation, $10,000 was to be paid Naylor on June 10th. The same amount was to be paid by Naylor to the defendant corporation on June 15th. On June 14th, the directors ordered that the amount thus due Naylor should be paid, by the issue of checks payable to the defendant corporation. Two such checks, of $8,000 and $2,000 respectively, were issued, and duly signed by the vice-president and the treasurer, the president having resigned, and the same were delivered to Naylor, who delivered them to the defendant company, in payment of the amount due from him on his contract. These are the funds which the plaintiff seeks to recover. The argument in its behalf is that Naylor, as a promoter, sustained a fiduciary relation to the corporation which he organized;

that he obtained his contract from the new corporation by fraudulent concealment and representation; and that the defendant corporation, at the time it received the checks in question, knew of the fraud thus practiced, or at least knew such facts as charged it with knowledge of the fraud. It is also argued that the officers and directors of the company were illegally elected, and that they were without title to their respective offices as mere usurpers, and that all their acts were wholly void. It is also argued that the defendant company had knowledge of such lack of authority.

Without going into undue details of the evidence, there is much in the record tending to show gross fraud on the part of both Naylor and Hall in their dealings with the organization of the new company, and in acquiring their contracts therewith. If Naylor obtained his contract by fraudulent representations or concealment, the corporation could repudiate it, upon discovery. It could sue Naylor for damages or for an accounting; or it could rescind the contract, and recover the $10,000 paid. In that event, it could also recover such amount paid to any third party who had wrongfully received the same, with notice of the fraud; and such is a large part of the argument for appellant. The trouble we find at this point is that the argument is at variance with the petition. The petition was not predicated upon the theory of fraud on the part of Naylor or Hall. There is no allegation that the contract of Naylor was obtained by fraud; nor any allegation that such contract with Naylor was ever rescinded or repudiated. Indeed, there was no reference in the petition either to Naylor or to Hall, or to the contract pursuant to which the checks in controversy were paid. The petition was predicated upon the theory that the officers who purported to act for the new corporation were not such *de jure*, because

1. CORPORATIONS: contracts with promoter: fraud: remedies.

of illegality in their selection; and that the defendant knew
of such illegality.

If, under the pleadings and the evidence, we were war-
ranted in finding fraud on the part of Naylor in obtaining
such contract, this would render the contract voidable only,
and not void. It would rest in the election
of the corporation to rescind it. It is urged
in argument that the beginning of the suit
is a sufficient act of rescission. But Naylor
is not a party to the suit. If rescinded, it must be so re-
scinded as to Naylor. There is nothing in the petition or the
evidence to warrant a finding that such rescission was had.

2. CORPORATIONS:
contracts with
promoter:
fraud.

We turn away from the question of fraud, therefore, and
proceed to consider the case upon the theory of the petition.

Were the check and the delivery thereof to the defend-
ant corporation rendered invalid, in that the officers issuing
the same were elected irregularly or illegally, and in that
the defendant corporation received the same without con-
sideration?

On the question of lack of consideration, the argument
is that there were no contractual relations between the two
corporations; that the plaintiff corporation owed nothing to
the defendant; that the defendant, there-
fore, parted with nothing, and the plaintiff
got nothing. The argument is not quite
sound. Disregarding the question of fraud,
as we must, the plaintiff corporation was
bound by a contract, good on its face for the payment of
$10,000 on the tenth day of June. It knew that it could not
acquire a good title to the packing plant from Naylor until
Naylor had acquired it from the defendant. It had an in-
direct interest, therefore, in insisting that the money paid
by it to Naylor should be applied by Naylor toward the ac-
quisition of the property. The acceptance by Naylor of
these checks payable to the defendant company was an ac-

3. CORPORATIONS:
contracts with
promoter: con-
sideration: ac-
ceptance of
check.

ceptance of them as payment of the amount due him under his contract. The plaintiff company was entitled to claim credit accordingly. The acceptance of these checks by the defendant company from Naylor was an acceptance of them as payment of the amount due from him to it on June 15th. As to the mere question of consideration, therefore, there was no lack.

On the question of the defect of title to office of the officers of the plaintiff corporation, we are confronted with the fact that they were *de facto* officers. Each of them was in possession of his office and exercising its functions, and no one contended with him. As to what the rights of these *de facto* officers might be as between them and the corporation, or as between them and its stockholders, or as between each other, we have no occasion to consider. The defendant corporation, which was the payee of the checks, was a third party. It is settled law that, where a third party in good faith deals with a corporation through purported officers who are acting as such openly and without challenge, they will be deemed to be such officers *de facto,* and the corporation will be deemed bound by their acts, within the scope of the functions of the office. Corporations necessarily act in all cases through officers. Clearly, it would be impracticable for third parties to deal with corporations at all, if each one must investigate the legality of the title of each corporation officer, as a condition precedent to a business transaction. The following excerpt from 2 Thompson on Corporations (2d Ed.) is a condensed statement of the law on this question:

4. CORPORATIONS: officers *de facto*: dealings with third persons.

"Section 1442. It scarcely needs judicial authority to the proposition that the corporation will be bound by any acts of *de facto* officers, where such acts would bind it if performed by officers *de jure*. The reasons for this are obvious. If the corporation does not wish to be bound by the

acts of such officers, its duty is to challenge their right to the office immediately; otherwise, it adopts their acts as its own. This principle is illustrated in a case where stockholders elected a treasurer who filled the position under a claim of right to the office, and without dispute on the part of any stockholder or member of the corporation. While thus discharging the functions of the office, he executed a note on behalf of the corporation, and, in an action on the note, the corporation attempted to defend on the ground that the person executing the note was not, in fact, the treasurer of the corporation. In holding invalid such a defense, the court said that 'we are of opinion that, under such circumstances, the corporation itself cannot be permitted to contend, in defense of an action like the present, that the acts of a person who, under color of an election to the office, has, without protest or opposition from any source, acted as its treasurer for so long a time, are invalid, merely because the annual meeting at which he was chosen was not called in accordance with the by-laws.'

"Section 1447. It is very well settled, and for good reasons, that the acts of de facto officers are not subject to collateral attack. This very common principle that runs through the entire body of the judicial system, is applied to the acts of officers de facto of corporations. Thus, a collateral attack was not permitted on an agreement executed by persons acting as officers of a corporation under an assumed election, but ineligible to the offices at the time of their election. Persons holding under color of an election are said to be officers de facto, and where they have charge of the affairs of the corporation, they are authorized to bind it in all matters legitimately devolving upon such officers."

While the petition in this case alleges that the defendant corporation "well knew" the alleged defect of title of these officers, we find no evidence of knowledge on the part of the defendant of any infirmity or defect in the organiza-

tion of the plaintiff company or in the election of its officers. We reach the conclusion that the decree entered below must be—*Affirmed.*

LADD, C. J., PRESTON and SALINGER, JJ., concur.